*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* L-S MOREHEAD, Minor.

UNPUBLISHED
February 18, 2026
1:30 PM

No. 375278
Muskegon Circuit Court
Family Division
LC No. 23-005301-NA

Before: SWARTZLE, P.J., and MALDONADO and ACKERMAN, JJ.

PER CURIAM.

Respondent-father appeals by right the trial court order terminating his parental rights to his minor child, LSM,[1] under MCL 712A.19b(3)(g) (failure to provide proper care or custody) and (j) (reasonable likelihood of harm if returned to parent). We affirm in part, vacate in part, and remand for further proceedings.

## I. BACKGROUND

In October 2023, petitioner, the Department of Health and Human Services (DHHS), sought to remove LSM from respondent-father's care. At that time, LSM was eight years old. The DHHS filed a petition requesting care and custody of LSM after respondent-father, LSM's sole parental figure, was arrested for felony surveilling an unclothed person, MCL 750.539j(1)(a).

The trial court authorized the petition after a preliminary hearing, and a lawyer-guardian ad litem (LGAL) was appointed for LSM. The DHHS removed LSM from respondent-father's care and placed him with a licensed, unrelated foster-home provider. Shortly thereafter, the DHHS placed LSM with his paternal aunt. Respondent-father demanded a jury trial, but his pending felony charge for surveilling an unclothed person led to a delayed trial date.

---

[1] LSM's mother left LSM in respondent-father's care when LSM was an infant and voluntarily relinquished her parental rights. LSM's mother is not a party to this appeal.

In July 2024, following a bench trial, respondent-father was found guilty of felony surveilling an unclothed person. The trial court sentenced him to serve 18 months to 15 years in prison. In August 2024, the trial court conducted an adjudication hearing, but nothing was placed on the record. The court and parties stipulated that respondent-father admitted certain allegations, including his recent felony conviction, which required registration under the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq*. All parties agreed that these allegations provided sufficient basis for the court to exercise jurisdiction over respondent-father pursuant to MCL 712A.2(b). Moreover, the trial court's adjudication order indicates that respondent-father entered a plea acknowledging the trial court's jurisdiction.

At the March 2025 termination hearing, the trial court heard testimony from DHHS foster-care specialist, Laura Borek. Borek described "very spotty" communication with respondent-father. She recalled finally making phone contact with respondent-father in March 2024 and only meeting in-person twice, once in April 2024 and another time in June 2024. Concerning a treatment plan, Borek stated that respondent-father agreed to participate in a psychological evaluation, however, he denied the need for any other type of service. Borek testified that she attempted to reach back out to respondent-father to verify his information for a psychological evaluation, but respondent-father never returned her texts or voice mails.

Borek also recalled LSM telling her that "he was tired of the inconsistency in his life with his father," that "he wanted to remain living with his aunt," and that he "was very excited about the prospect of a possible adoption with his Aunt." Borek testified that she believed that it was in LSM's best interests to be adopted by his aunt because the home was "a very stable and loving environment for him" and he was "thriving." The aunt told Borek that her preference was to adopt LSM. The trial court then heard testimony from another DHHS foster-care worker, Tiffany Kitchen. Kitchen took over the case from Borek in November 2024 and described LSM as "doing phenomenal" in his aunt's home. She also recalled LSM stating that he would prefer to stay with his aunt until he reached adulthood and the aunt stating that she preferred to adopt LSM. Kitchen also believed that it was in LSM's best interests for respondent-father's parental rights to be terminated to make him available for adoption. Because LSM and his aunt preferred adoption, the LGAL supported adoption and agreed that it was in LSM's best interests for respondent-father's parental rights to be terminated.

The trial court made several findings on the record. First, the trial court found that services were provided to respondent-father.[2] The trial court detailed respondent-father's "chronic neglect by reason of criminality" and described the "uncertainty" that respondent-father's criminal behavior caused LSM and "plagued" his life. The trial court stated: "[T]he wisdom of this nine-year-old is: I'm tired and just let me stay right where I am. And I'm comfortable here. I'm steady here. I'm stable here. I know what to expect from day to day here." The trial court determined by clear and convincing evidence that respondent-father had not been able to provide proper care and custody to LSM and would not be able to do so within a reasonable time. On the basis of

---

[2] The trial court did not specify which services were provided, but the record supports that the DHHS provided a case service plan, team decision-making meetings, case management services, medication management, and home visits.

respondent-father's "conduct" and "capacity over the years," the trial court found that LSM faced a substantial likelihood of harm. It found that it was in LSM's best interests to provide the "permanency that [he] is longing for, seeking, and is actually—has actually enunciated that he wants with the home that is intending to provide that permanency." The trial court terminated respondent-father's parental rights under MCL 712A.19b(3)(g) and (j). This appeal followed.

## II. REASONABLE EFFORTS

Respondent-father argues that the trial court plainly erred by terminating his parental rights when the DHHS failed to make reasonable efforts toward family reunification prior to termination. We disagree.

## A. LEGAL FRAMEWORK

It is well established that under Michigan's Probate Code, the DHHS "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c); MCL 712A.19a(2). Reasonable efforts must be appropriate to address the specific barriers facing the family, so efforts will vary according to circumstance. See *In re Hicks/Brown*, 500 Mich at 85-86. However, reasonable efforts must include creating a case service plan " 'outlining the steps that both [the DHHS] and the parent will take to rectify the issues that led to court involvement and to achieve reunification.' " *In re MJC*, 349 Mich App 42, 55; 27 NW3d 122 (2023), quoting *In re Hicks/Brown*, 500 Mich at 85-86. To the extent that the DHHS has the "responsibility to expend reasonable efforts to provide services to secure reunification," a parent has the commensurate responsibility "to participate in the services that are offered" and demonstrate that he or she sufficiently benefited from the services provided. *In re Atchley*, 341 Mich App 332, 339; 900 NW2d 685 (2022).

Generally, to preserve an argument regarding the sufficiency of reasonable reunification efforts, a respondent must object to the services at the time that the efforts are offered. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). "However, even if a parent does not object or otherwise indicate that the services provided were inadequate when the initial case services plan is adopted, such an objection or challenge may also be timely if raised later during the proceedings." *In re Atchley*, 341 Mich App 332, 337; 990 NW2d 685 (2022). In this case, defense counsel argued during the termination hearing that petitioner failed to make "reasonable efforts." Therefore, this issue is preserved.[3]

In an appeal from an order terminating parental rights, we review the trial court's findings for clear error. MCR 3.977(K); *In re Atchley*, 341 Mich App at 338. "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm

---

[3] The parties appear to agree on appeal that respondent-father failed to preserve this issue. However, this Court is not bound to accept such a concession. *People v Novak*, 489 Mich 941, 942; 798 NW2d 17 (2011). It is clear from the record that respondent-father's trial counsel argued this issue during the termination hearing, so we treat this issue as preserved.

conviction that a mistake has been made." *In re Atchley*, 341 Mich App at 338 (quotation marks and citation omitted).

## B. ANALYSIS

Respondent-father argues that no efforts were ever ordered and that none were made. Neither contention is supported by the record.

The record indicates that respondent-father rebuffed the DHHS's initial attempts to connect with him for approximately six months at the outset of these proceedings. When respondent-father finally communicated with the DHHS, they discussed his barriers to reunification, which they identified as "criminality, mental health, substance abuse, parenting skills, and communication." They also discussed his treatment plan, which included a psychological evaluation, counseling, substance abuse treatment, drug screens, parenting classes, meeting with a parent mentor, maintaining appropriate housing, and undergoing a sexual interest assessment. Respondent-father indicated that he was willing to participate in a psychological evaluation and parenting classes, but that he did not have any issues with substance abuse or mental health and that he did not need any additional services. That said, respondent-father did not even complete the psychological evaluation or parenting classes. At the disposition hearing, the DHHS confirmed that respondent-father "has not participated in any services leading up to this." Following the disposition hearing, the trial court ordered the DHHS to provide services. However, after the permanency planning hearing 43 days later, the trial court then ordered that no more services be offered.

In light of the foregoing, we conclude that respondent-father has failed to establish that the trial court clearly erred in finding that reasonable reunification efforts had been made. *In re Atchley*, 341 Mich App at 338. Therefore, respondent-father is not entitled reversal on the basis of a lack of reunification efforts.[4]

## III. STATUTORY GROUNDS

Respondent-father argues that the trial court erred by terminating his parental rights under either MCL 712A.19b(3)(g) or (j). We disagree.

"Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). As noted, in an appeal from an order terminating parental rights, we review the trial court's findings for clear error. MCR 3.977(K); *In re Atchley*, 341 Mich App at 338.

---

[4] Respondent-father's argument that the trial court failed to make an express finding of aggravated circumstances to excuse reunification efforts is moot. As noted, respondent-father was required to register under SORA, which would constitute an aggravated circumstance under MCL 712A.19a(2)(d). However, the DHHS agreed not to seek termination at the initial disposition. Accordingly, we decline to address this argument. See *In re Smith*, 324 Mich App 28, 41; 919 NW2d 427 (2018).

Under MCL 712A.19b(3)(j), termination of parental rights is proper when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Harm under MCL 712A.19b(3)(j) includes emotional and physical harm. *In re Sanborn*, 337 Mich App 252, 279; 976 NW2d 44 (2021). A parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home. MCL 712A.19a(5); see also *In re Trejo Minors*, 462 Mich 341, 358-360; 612 NW2d 407 (2000).

In terminating respondent-father's parental rights, the trial court recognized respondent-father's history of "criminal behavior" and the "uncertainty" that it created in LSM's life. The court noted that, although respondent-father clearly wanted the best for his child, considering his track record, there was no guarantee that respondent-father would ever comport his "behavior in a manner that allows [LSM] to feel stable and steady." The trial court further noted that respondent-father's instability posed a substantial likelihood of harm to LSM, "which would just be as simple as the shaking up of his home environment."

Respondent-father suggests that the trial court's findings regarding his criminal behavior were "speculative." This suggestion overlooks that termination is proper if there is a "*reasonable likelihood*" of harm. MCL 712A.19b(3)(j) (emphasis added). The trial court pointed out that services were provided and that respondent-father was given the opportunity "to stop being a criminal and just go ahead and raise his child," yet "he could not stop himself" from "trying to take videos of" minor children. Given respondent-father's "convictions over the course of decades" and recent conviction of felony surveilling an unclothed person, LSM faced a reasonable likelihood of harm if returned to respondent-father's care. Because the trial court's findings were supported by the record, there was no clear error in its conclusion that termination was proper under MCL 712A.19b(3)(j).[5]

## IV. BEST INTERESTS

Respondent-father argues that the trial court failed to explicitly address relative placement when making its best-interest determination, and the trial court clearly erred by finding that termination of respondent-father's parental rights was in LSM's best interests. We agree.

"Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *In re Keillor*, 325

---

[5] In light of our conclusion, we need not address the remaining ground for termination. See *In re Ellis*, 294 Mich App at 32. However, we note that the trial court erred by applying the former version of MCL 712A.19b(3)(g). The trial court determined that it was shown by clear and convincing evidence that respondent-father "without regard to [his] intent" had not been able to provide proper care and custody for the child. The quoted language was employed in the former version of the statute, see 2012 PA 386, whereas the current version requires a finding that "[t]he parent, *although, in the court's discretion, financially able to do so*, fail[ed] to provide proper care or custody for the child. . . ." MCL 712A.19b(3)(g), as amended by 2018 PA 58 (emphasis added). Nevertheless, any error in this regard was harmless given our conclusion that MCL 712A.19b(3)(j) was properly satisfied.

Mich App 80, 93; 923 NW2d 617 (2018) (quotation marks and citation omitted). The trial court should consider all the evidence when making a best-interest determination. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2010). "Best interests are determined on the basis of the preponderance of the evidence." *In re LaFrance*, 306 Mich App 713, 733; 858 NW2d 143 (2014). The court should consider "the child's bond to the parent[;] the parent's parenting ability[;] the child's need for permanency, stability, and finality[;] and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App at 713. "[T]he fact that the children are in the care of a relative at the time of the termination hearing is an explicit factor to consider in determining whether termination was in the children's best interests." *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012). "A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *Id*. Placement with a relative weighs against termination, but that fact is not dispositive given that a trial court "may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests." *Id*.

In this case, the trial court's best-interest analysis is devoid of any consideration as to relative placement. Two DHHS foster-care workers testified that LSM was placed with the paternal aunt. However, the trial court did not acknowledge this placement when making its best interest findings, much less acknowledge that this placement weighed against termination. atThis error alone is sufficient to require vacation of the best-interest determination. See *id*. We therefore vacate the best-interest determination and remand for further proceedings. On remand, we direct that the trial court fully address the best-interest factors when rendering its decision. We retain jurisdiction to ensure the prompt resolution of this matter.

## V. CONCLUSION

We affirm the trial court's determination that termination was warranted under MCL 712A.19b(3)(j) but vacate the trial court's best-interest determination and remand for further proceedings consistent with this opinion. We retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Allie Greenleaf Maldonado
/s/ Matthew S. Ackerman

# Court of Appeals, State of Michigan

## ORDER

IN RE L-S MOREHEAD, MINOR

Docket No.    375278

LC No.      23-005301-NA

Brock A. Swartzle
Presiding Judge

Allie Greenleaf Maldonado

Matthew S. Ackerman
Judges

For the reasons stated in the opinion issued with this order, we REMAND this case for further proceedings. We retain jurisdiction. After the remand proceedings conclude, we will review the decisions that the trial court made during those proceedings and consider any remaining issues in this appeal. Any challenges to the trial court's decisions on remand must be raised in this appeal. Therefore, the parties and the trial court must not initiate a new appeal from an order entered on remand within the scope of this appeal. The Clerk of the Court is directed to reject the initiation of a new appeal from such an order.

Appellant must initiate the proceedings on remand within 56 days of the Clerk's certification of this order, and the trial court must prioritize this matter until the proceedings are concluded. As stated in the accompanying opinion, the trial court shall conduct a best-interest factor analysis, including considering the child's relative placement, and set forth its factual findings and conclusions of law on the record to enable appellate review. The proceedings on remand are limited to this issue.

The parties must serve copies of their filings in the trial court on this Court. Appellant must file with this Court copies of all orders entered on remand within seven days of entry.

Appellant must ensure the transcript of all proceedings on remand is filed in the trial court and this Court within 21 days after completion of the proceedings.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

February 18, 2026
Date

Chief Clerk